IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Arthur M. Field, Ph.D.; Kathryn Taillon; T. Bart Kelly; and Capital Investment Funding, LLC.<br><br>Plaintiffs,<br><br>vs.<br><br>Henry McMaster, Individually and as Securities Commissioner of SC; William J Condon, Jr., Individually and as Assistant Securities Commissioner; Tommy Windsor, Individually and as a Securities Investigator; Joe F. Jordan, Jr., Individually and as an Investigator of the Attorney General; Jennifer Evans, by Personal Representative; Lansing Logan, Individually and as a Special Investigator of the Attorney General,<br><br>Defendants. | Civil Action No.: 6:09-1949-HMH-BHH<br><br>**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant Condon's and defendant Windsor, Jordan, Evans, McMaster, and Logan's respective motions for summary judgment [Doc. 110, 113] pursuant to Federal Rule of Civil Procedure 56. The plaintiffs have pled various federal and state law claims for money damages, as well as for declaratory and injunctive relief. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## BACKGROUND[1]

The plaintiffs in this *pro se* action are principals of Capital Investment Funding, LLC, as well as the corporation itself. The plaintiff Field is a licensed attorney in Connecticut and

---

[1] There has been no discovery in this case. Some of the following facts are established in the record but others are representations of the parties. The undersigned has not relied on any fact in its determination, which is either unsupported or otherwise contested as between the parties.

New Jersey, although not in South Carolina. The individual plaintiffs formed the corporation Capital Investment Funding, LLC (CIF), in 1999. The defendants contend that CIF was created in order to borrow money from South Carolina residents by issuing securities in the form of promissory notes and to lend that money to Lancaster Resources, Inc. (LRI), CIF's parent company.

On January 15, 2008, as alleged in the Complaint, the officers or members of CIF voted to begin the process of winding up the company. (Compl. ¶ 149.) It appears that as a result of this decision, beginning in the early months of 2008, a number of CIF's investors filed suit against CIF, Field, the other plaintiffs in the present case, and others, seeking to protect or recover their investments. (See Defs. Ex. 2.)[2] The plaintiffs in the state cases alleged a breach of contract, sought an accounting and the attachment of the property of CIF and Field, and sought the appointment of a receiver. *Id*.

Prior to those lawsuits, on May 11, 2007, the Securities Division of the South Carolina Attorney General's office had issued a Notice of Intent to Seek a Stop Order. (Defs. Ex. 11.) That filing was based upon the Division's concerns over inaccuracies and fraud contained in certain registration statements of CIF. *Id*.

The plaintiffs' claims relate to actions of prosecutors and investigators of the Securities Division and the Attorney General's office in the prosecution of this Notice and putative criminal charges. The plaintiffs' complaints are voluminous. (See generally Compl.; Field Aff.) In short, the plaintiffs contend that defendant Condon wrongfully denied CIF's registration (Field Aff. ¶ 102); the Notice of Intent was fraudulent and retaliatory, *id*. ¶ 104-05; the Notice of Intent and subsequent proceedings caused damage to CIF's public reputation, *id*. ¶¶ 111-13; that the defendants have continually and maliciously harassed the plaintiffs through wrongful subpoenas and interviews, *id*. ¶¶ 172-73; the plaintiffs

---

[2] Exhibits to the motion of the multiple defendants [Doc. 110] will be cited as "Defs. Ex." Exhibits to defendant Condon's motion [Doc. 113] will be cited as "Condon Ex."

2

colluded with attorneys to sue CIF civilly, *id*. ¶ 186; and subsequently interfered with the settlement of such lawsuits to wrongfully and improperly delay repayment of CIF's Note Holders, *id*.

## APPLICABLE LAW

**LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT AND PLEADINGS**

The plaintiffs brought this action *pro se*. This fact requires that their pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not

4

> so respond, summary judgment, if appropriate, shall be entered
> against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

As an initial matter, the Court has disallowed any discovery in this case [Doc. 141], in order to consider, at the earliest possible stage, the applicability of certain immunities which are designed, in part, to avoid for government officials the expense and burden of the same. *See Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 815 (2009). The Court, therefore, is hesitant to consider any arguments of the defense which stray into areas better considered after discovery is taken or otherwise unrelated to any immunity defense. The Court will be conservative in this regard.

Prosecutorial and qualified immunities, however, are defenses rightly considered on a motion for summary judgment even prior to formal discovery. *See Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987); *Lescs v. Martinsburg Police Department*, 138 Fed. Appx. 562, 564 (4th Cir. 2005); *Demello v. Ney*, 1999 WL 362906, at *2 (9th Cir. May 28, 1999); *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990). In response to a summary judgment motion based on such immunity defenses, a plaintiff's 56(f) affidavit must demonstrate a "connection between the information he would seek in discovery and the validity of the [defendant's] . . . immunity assertion." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (citations omitted).

**I.    Prosecutorial Immunity**

5

The defendants first contend that they have prosecutorial immunity against any claim for money damages by the plaintiffs. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); Lyles, 79 F.3d at 377. A prosecutor is absolutely immune from actions taken in the prosecutorial decision-making process in initiating or continuing a criminal prosecution. *See id.* at 431; *see also Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir.1997). When prosecutors perform advocative functions that are "intimately associated with the judicial phase of the criminal process," they are absolutely immune from civil suit. *Imbler*, 424 U.S. at 430. Prosecutors, therefore, are cloaked with absolute immunity once judicial proceedings against an individual have commenced. *See Goldstein v. Moatz*, 364 F.3d 205, 213-14 (4th Cir.2004) (distinguishing a prosecutor's investigative function, which does not trigger absolute immunity, as opposed to acting as an advocate, during which absolute immunity would apply). The touchstone is advocacy. *Id*. at 213-14. Where duties performed are merely investigatory or administrative the operative immunity should be a qualified rather than an absolute one. *See id.* Absolute immunity extends to "persons working under [a prosecutor's] direction, when they function as advocates for the state" and are clearly associated with the judicial process. *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004).

Emphasizing the Fourth Circuit's decision in *Goldstein*, the plaintiffs have countered that application of the prosecutorial immunity should be made "sparingly," *Goldstien,* 364 F.3d at 212, and that it should not be recognized as a shield against liability for conduct performed prior to a probable cause determination. *Id*. at 215-16.

The Court will consider each defendant, in turn, to determine whether or not their conduct can rightly be characterized as advocacy or investigation.

**A.    Defendants Condon and McMaster**

At all times relevant to this case, defendant Condon was an Assistant Attorney General in the South Carolina Securities Division (Condon Aff. ¶ 1) and defendant McMaster was the Securities Commissioner of South Carolina (McMaster Aff. ¶ 2).[3] It is undisputed that, on May 11, 2007,[4] the Securities Division filed a Notice of Intent to Seek a Stop Order pursuant to S.C. Code §§ 35-1-306(a)(stop orders), 35-1-306(e)(notices regarding same). (Compl. ¶ 100; Field Aff. ¶¶ 104-05.) Among other bases, Section 35-1-306 provides that a stop order "may issue" upon a finding that an entity's registration statement contains "false or misleading" information or its offering otherwise works "a fraud upon purchasers." S.C. Code §§ 35-1-306(a). The May 11 Notice was expressly predicated on the Securities Division's determination that CIF's registration statement was "incomplete, false, misleading, and tends to work a fraud upon purchasers . . . ." (Def. Ex. 11.) The Notice indicated the Securities Division's intent to seek the issuance of a Stop Order and revocation of any exemption under which CIF was offering securities. *Id*. The Notice itself was not an actual Stop Order. *See id.*

The Court believes that this act of the Securities Division converted its efforts from investigatory to adversarial and, therefore, necessarily advocative. First, "[p]rosecutors have absolute immunity when they are performing prosecutorial duties . . . even if it is a complaint charging a *civil* rather than a criminal violation." *Thomas v. City of Peoria*, 580

---

[3] In South Carolina, the Attorney General is the Securities Commissioner and his office includes the State's Securities Division. (See McMaster ¶ 2, Condon Aff. ¶ 1); http://www.scattorneygeneral.org/securities/index.html, http://www.scattorneygeneral.org/inside/index.html.

[4] The prosecutorial efforts for which the plaintiffs seek to recover and enjoin have all arisen subsequent to this date. To the extent the filing of this Notice constituted the beginning of the formal prosecution and advocacy against CIF, all subsequent acts would be covered by an absolute immunity, as having been prosecutorial rather than investigative in nature.

7

F.3d 633, 638 (7th Cir. 2009) (emphasis added); *see also Smith v. Power*, 346 F.3d 740, 742 (7th Cir.2003); *Skinner v. Govorchin*, 463 F.3d 518 (6th Cir. 2006). Although in an unpublished opinion, this district has specifically agreed that agency officials, who perform functions analogous to those of a prosecutor in initiating and pursuing *civil and administrative enforcement proceedings* are entitled to prosecutorial immunity. *We, the People, Sakima Iban Salih El Bey, Preamble Citizen of the United States Gov't, Nat. of the U.S. v. McMaster*, 2008 WL 1849800, at *6 (D.S.C. April 24, 2008) (citing *Pfeiffer v. Hartford Fire Ins.Co.*, 929 F.2d 1484, 1489 (10th Cir.1991)). Accordingly, to the extent the Stop Order proceedings were civil or administrative in nature it is no bar to the applicability of prosecutorial immunity. The plaintiffs have not argued otherwise.

Second, the Court does not interpret the Fourth Circuit's discussion of probable cause, in *Goldstein*, as disqualifying defendants Condon and McMaster, from the immunity's protection. Specifically, the determination of the Securities Division that grounds for a Stop Order existed, such that the proceedings could be initiated, was sufficient. *See Goldstein*, 364 F.3d at 215-16. As a result of its independent determination that a Stop Order was justified, it filed a Notice of Intent to Seek a Stop Order. (Defs. Ex. 11.) This is comparable to the discretionary determination made by criminal prosecutors when they believe probable cause exists to pursue a criminal case. *See Goldstein*, 364 F.3d at 215-16; *Sakima Iban Salih*, 2008 WL 1849800, at *6. It is well-established that the filing of a complaint or otherwise initiating a civil enforcement proceeding is, in fact, a "prosecutorial" duty. *Smith*, 346 F.3d at 742 (7th Cir.2003); *We, the People, Sakima Iban Salih*, 2008 WL 1849800, at *6.

Moreover, the proposition "that officials do not enjoy absolute immunity for acts committed prior to a probable cause determination (i.e., during investigation) – flows logically from the Supreme Court's declarations that the purpose of absolute immunity is

8

to *protect the exercise of discretion by key government officials.*" *See Goldstein*, 364 F.3d at 215-16 (emphasis added). "Once a prosecutor possesses probable cause, he must decide *whether to prosecute, which charges to initiate*, what trial strategy to pursue, and a multitude of other important issues that require him to exercise discretion." *Id*. (emphasis added). "In a pre-probable-cause investigation, on the other hand, a prosecutor exercises no more discretion than a police officer and thus should enjoy no more protection than qualified immunity." *Id*.

Similar to a post-probable-cause determination, the Notice filed constituted the Securities Division's exercise of its discretion to seek a Stop Order based on its finding that fraud was present in a registration statement and/or offering of CIF. (See Defs. Ex. 11.) In other words, they initiated a proceeding against CIF. It is precisely the exercise of this kind of discretion, which prosecutorial immunity is designed to guard. *See id*.

Accordingly, acts subsequent to the May 2007 filing would seem to be prosecutorial rather than merely investigatory, because they were performed pursuant to a live adversarial proceeding and in defendant Condon's and McMaster's roles as advocates of the State, respectively.

### B. Other defendants

All of the other defendants are either investigators or prosecutors with the Securities Division or the Attorney General's office, who worked at the direction of defendants Condon and McMaster. (Logan Aff. ¶ 2; Windsor Aff. ¶ 2; Jordan Aff. ¶ 2; Doc. 110-1 at 8.) As stated, *infra* note 1, the Securities Division is part of the Attorney General's office. (See McMaster ¶ 2, Condon Aff. ¶ 1); http://www.scattorneygeneral.org/securities/index.html, http://www.scattorneygeneral.org/inside/index.html. In the Court's view, the Notice of Intent, filed May 11, 2007, put the entire office of the Attorney General in an advocates role against

CIF, as a matter of law, even if additional investigations were pursued by other Divisions of the Attorney General's office, subsequent to that date. Critically, absolute immunity extends to "persons working under [a prosecutor's] direction, when they function as advocates for the state" and are clearly associated with the judicial process. *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir.2004); *Howell v. Gustafson*, 2010 WL 2026674 (D.S.C. 2010). This is equally true of investigators, like some of the defendants here. *See We, the People, Sakima Iban Salih*, 2008 WL 1849800, at *6. All defendants, therefore, enjoy the protection cast by Condon and McMaster's immunity shield raised in the discretionary and prosecutorial act of filing the Notice, about which the plaintiffs substantially complain.[5]

The Court's recommendation as to prosecutorial immunity would bar all of the plaintiff's federal and state law claims for money damages, which should be dismissed with prejudice. *See Williams v. Condon*, 553 S.E.2d 496 (S.C. Ct. App. 2001) (prosecutorial immunity). The plaintiff's claims for equitable relief, however, will be separately discussed below.

## II.   Injunctive and Declaratory Relief

The Court's recommendation as to prosecutorial immunity only affects the availability of money damages against the defendants and does not protect them from the injunctive and/or declaratory relief sought by the plaintiffs. *See Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736-37 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). The plaintiffs ask the Court to enter a permanent injunction

---

[5] This conclusion renders the qualified immunity analysis unnecessary. The defendants have encouraged the Court in this regard. [See Doc. 130 at 4.]

against "all future prosecution" and a declaration that "S.C.C.A. 1-7-115 and Title 35 Chapter 1" are unconstitutional.[6] (Compl. at 55.)

Defendants correctly note that a federal court may not award injunctive relief that would affect pending state criminal proceedings absent extraordinary circumstances. *See Bieber v. South Carolina Com'n on Lawyer Conduct*, 2008 WL 4442629 (D.S.C. September 24, 2008) (Herlong, J.). In *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) the United States Supreme Court held that a federal court should not equitably interfere with state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir.1996). The *Younger* Court noted that courts of equity should not act unless the moving party has no adequate remedy at law and will suffer irreparable injury if denied equitable relief. *Younger*, 401 U.S. at 43-44.

Pursuant to *Younger* and its progeny, a district court is required to abstain from interfering in state proceedings, even if jurisdiction exists, where (1) there are ongoing state judicial proceedings; (2) the proceedings implicates important, substantial, or vital state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceedings. *Nivens v. Gilchrist,* 444 F.3d 237, 241 (4th Cir. 2006); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir.1994) (citing *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

The defendants emphasize that the plaintiffs have an adequate opportunity to raise their federal claims in the state proceedings. The plaintiffs have made no response

---

[6] The plaintiffs have not made any rejoinder regarding the defendants' contention that the plaintiffs' request for declaratory relief is now moot. [Doc. 110 at 23-24.] The Court, therefore, considers it abandoned or, in the alternative, that the plaintiffs have failed to overcome the legal contentions of the defendants in that respect. To the extent the district court disagrees that the matter has not been abandoned, the undersigned would recommend that the motion for summary judgment be denied as to the declaratory relief claim and that further briefing be requested concerning any charge of unconstitutionality by the plaintiffs. Some discovery may also be appropriate in this regard.

11

whatsoever concerning the *Younger* doctrine, specifically, or abstention, generally, as far as the Court can tell. The Court, however, believes that *Younger* is inapplicable here insofar as there is no ongoing state judicial proceeding about which the plaintiffs complain. *See Nivens*, 444 F.3d at 241. It appears that most jurisdictions agree that "[t]he possibility of future prosecutions, however – even the likelihood of future prosecutions – is not sufficient to justify *Younger* abstention." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1242 (10th Cir. 2001). Insofar as the plaintiffs seek an injunction against prosecutions which have not yet been instituted, *Younger* is, therefore, inapposite.[7]

The Court does not believe that the defendants have advanced any other arguments, which might be appropriately considered prior to discovery, which would recommend dismissal of claims for injunctive relief. As the defendants note, the Court has already found doubtful the plaintiff's claims in this regard. [See Docs. 16, 30.] But prior to discovery, the Court believes any further determination as a matter of law would be improvident. Although the Court has doubted the plaintiff's ability to establish irreparable harm, it is not impossible that they might do so in discovery.

### III. Other Defenses

To the extent prosecutorial immunity does not operate as a complete shield for some or all of the defendants or some or all of the claims, the defendants also suggest that the

---

[7] The Court does not believe this determination is at odds with its reasoning concerning prosecutorial immunity. To the undersigned, that analysis turned on whether the individual defendants were exercising a kind of prosecutorial discretion to initiate agency proceedings and subsequent acts. While *Younger* likely applies to administrative proceedings, *New Orleans Public Service, Inc. v. Council of City*, 491 U.S. 350, 370 & n.4 (1989), it does not appear that any were formally pending at the time this lawsuit was filed and the plaintiffs have expressly asked for relief from *future* prosecutions, which are necessarily not yet pending. In other words, the state activity was sufficient to implicate immunity but involved something less than what *Younger* demands. Again, this is true particularly in light of the way the plaintiffs, themselves, have framed the relief.

plaintiff's state law claims should be dismissed because the South Carolina Tort Claims Act ("SCTCA") is the "exclusive remedy for any tort committed by an employee of a governmental entity." *Flateau v. Harrelson*, 355 S.C. 197, 203, 584 S.E.2d 413 (Ct. App. 2003) (citing S.C. Code Ann. § 15-78-70(a)). The defendants, however, recognize that the SCTCA does not insulate a government employee from liability arising out of conduct outside the scope of official duties or "actual fraud, actual malice, intent to harm, or a crime involving moral turpitude . . . ." S.C. Code § 15-78-70(b). Moreover, the defendants concede that the plaintiffs have alleged that the defendants acted outside the scope of their duties and with malice. [Doc. 110-1 at 22.] The defendants argue, however, that these are unsubstantiated and self-serving allegations of the plaintiffs. The Court would agree that bald-faced allegations are normally insufficient to survive summary judgment. *See* Fed. R. Civ. P. 56(e). But, as stated, no discovery has been taken in this case; the Court will not recommend dismissal for a failure to produce evidence where no opportunity has been afforded to secure it.

For this same reason, the defendants' various substantive arguments as to the merits of the plaintiffs' state law claims will not be entertained. To the extent the defendants believe that the plaintiff's have failed to sufficiently plead facts, which if proven would establish such causes, the Court would disagree. The averments in the Complaint are more than sufficient to survive a 12(b)(6) argument. It is voluminous and substantially specific.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' respective motions for summary judgment be [Doc. 110, 113] be GRANTED, in part, and DENIED, in part. Specifically, the plaintiffs' federal and state law claims should be

13

dismissed with prejudice to the extent they seek money damages or declaratory relief. In regards to the plaintiffs' claims for injunctive relief, the motions should be DENIED.

IT IS SO RECOMMENDED.

                                              s/Bruce H. Hendricks
                                              United States Magistrate Judge

June 30, 2010
Greenville, South Carolina

**The plaintiffs' attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).