IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Arthur M. Field, Ph.D., Kathryn Taillon, T. Bart Kelley, and Capital Investment Funding, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 6:09-1949-HMH-BHH |
| vs. | ) ) ) | **OPINION & ORDER** |
| Henry D. McMaster, Individually and as Securities Commissioner of South Carolina; William J. Condon, Jr., Individually and as an Assistant Securities Commissioner; Tommy Windsor, Individually and as a Securities Investigator; Joe F. Jordan, Jr., Individually and as an Investigator of the Attorney General; Jennifer Evans, by Personal Representative; Lansing Logan, Individually and as a Special Investigator of the Attorney General, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Bruce Howe Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Defendants filed motions for summary judgment on March 11, 2010 and March 12, 2010. In her Report and Recommendation,

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

Magistrate Judge Hendricks recommends granting in part and denying in part Defendants' motions for summary judgment. (Report and Recommendation 13-14.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are principals of Capital Investment Funding, LLC ("CIF"). Defendants are current or former employees of the South Carolina Attorney General's Office ("the Office"). On May 11, 2007, the Securities Division of the Attorney General's Office ("the Division") issued a Notice of Intent to Seek a Stop Order ("Notice") against CIF alleging that "the registration statement submitted by [CIF was] incomplete, false, misleading, and tends to work a fraud upon purchasers." (Defs. Mem. Supp. Summ. J. Ex. 11 (Notice at 1).) Plaintiffs allege that the issuance of the Notice "was a ruse" and Defendant William J. Condon ("Condon") has a personal vendetta against Plaintiffs. (Pl. Mem. Opp'n Summ. J. 8-17.)

Plaintiffs filed suit against Defendants on July 22, 2009, alleging numerous claims against Defendants. Particularly, Plaintiffs allege that Defendants deprived them of their civil rights in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 18 U.S.C. § 1961, and 42 U.S.C. § 1986. (Compl., generally.) Plaintiffs also assert numerous state law claims against Defendants. (Id.)

Defendants Henry D. McMaster ("McMaster"), Tommy Windsor ("Windsor"), Joe F. Jordan, Jr. ("Jordan"), Jennifer Evans, by personal representative ("Evans"), and Lansing Logan ("Logan") filed a motion for summary judgment on March 11, 2010. Condon filed a motion for summary judgment on March 12, 2010. Plaintiffs filed a memorandum in opposition to Defendants' motions for summary judgment on April 19, 2010. Defendants filed replies on April 28, 2010. On June 30, 2010, Magistrate Judge Hendricks filed a Report and Recommendation

recommending that the court grant in part and deny in part Defendants' motions for summary judgment. (Report and Recommendation 13-14.)

On July 8, 2010, Plaintiff Arthur M. Field ("Field") filed objections joined by Plaintiffs Kathryn Taillon ("Taillon") and T. Bart Kelley ("Kelley"). On July 9, 2010, Taillon filed objections joined by Field. On July 13, 2010, Condon filed objections. On July 15, 2010, CIF filed objections. Kelley filed additional objections on July 16, 2010, joined by Field and Taillon. The remaining Defendants filed objections on July 22, 2010. Condon filed a reply to Plaintiffs' objections on July 21, 2010. On July 22, 2010, the remaining Defendants filed a reply to Plaintiffs' objections. On July 27, 2010, Field filed a reply. This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Report and Recommendation

Magistrate Judge Hendricks concluded that prosecutorial immunity "bars all of the plaintiff's federal and state law claims for money damages." (Report and Recommendation 10.) As such, the magistrate judge recommends that "the plaintiffs' federal and state law claims . . . be dismissed with prejudice to the extent they seek money damages or declaratory relief [and] [i]n regards to the plaintiffs' claims for injunctive relief, [Defendants'] motions should be denied." (Id. 13-14.)

### B. Objections

Plaintiffs and Defendants filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate

review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Plaintiffs raise one specific objection to the Report and Recommendation.[2] Plaintiffs argue that the magistrate judge erred in finding that Defendants are immune from suit because of prosecutorial immunity. (Field Objections, generally.); (Taillon Objections, generally.) Condon also raises one specific objection. Condon argues that Plaintiffs' claims against him for injunctive relief are moot because he is no longer employed with the Office. (Condon Objections 1-2.) Additionally, Defendants McMaster, Windsor, Jordan, Evans, and Logan raise one specific objection to the magistrate judge's Report and Recommendation. They argue that the magistrate judge erred by not recommending that summary judgment be granted on Plaintiffs' claims for injunctive relief because Plaintiffs have not shown irreparable harm. (Defs. Objections, generally.)

### 1. Prosecutorial Immunity

Plaintiffs argue that the magistrate judge erred in concluding that Defendants are immune from suit by prosecutorial immunity. (Field Objections, generally.); (Taillon Objections, generally.) As stated above, Defendants are current or former employees[3] of the Office.

---

[2] While Plaintiffs filed multiple objections each of which raised numerous objections, each objection contests the rationale behind the magistrate judge's conclusion that Defendants were immune from suit by prosecutorial immunity.

[3] Condon is no longer employed by the Attorney General's Office. (Condon Objections 1.) Evans is deceased. (Defs. Mem. Supp. Summ. J. 8.)

A prosecutor is absolutely immune from suit for "conduct in initiating and in presenting the State's case." Springmen v. Williams, 122 F.3d 211, 213 (4th Cir. 1997) (internal quotation marks omitted). Absolute immunity applies whether a prosecution is "civil, or criminal, or merely . . . administrative." Thomas v. City of Peoria, 580 F.3d 633, 638-39 (7th Cir. 2009). "[T]he purpose of absolute immunity is not to protect an erring official, but to insulate the decisionmaking process from the harassment of prospective litigation." Goldstein v. Moatz, 364 F.3d 205, 212 (4th Cir. 2004) (internal quotation marks omitted).

> [A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought.

Butz v. Economou, 438 U.S. 478, 515 (1978). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). "A prosecutor . . . is not protected by absolute immunity for his activities prior to a probable cause determination, because he is not yet–and should not yet be–acting as an advocate." Goldstein, 364 F.3d at 214. "We therefore must determine whether, in this setting, . . . Defendants are akin to prosecutors possessing probable cause and exercising their discretion, or whether they are akin to investigators involved in pre-probable-cause activities." Id. at 215.

### a. Condon

At all times relevant to the facts raised in the complaint, Condon served as an Assistant Attorney General with the Enforcement Branch of the Securities Division of the Office. (Condon Mem. Supp. Summ. J. Ex.1 (Condon Aff. ¶ 1).) The majority of Plaintiffs' allegations are directed at Condon's actions. (Compl., generally.); (Pls. Mem. Opp'n Summ. J., generally.)

"On or about February 15, 2007, [Condon] was approached by . . . an attorney with the Registration Branch of the Securities Division of the [Office], who requested that [Condon] review documents filed by [Field] . . . in connection with [CIF]." (Condon Mem. Supp. Summ. J. Ex.1 (Condon Aff. ¶ 2).) "On . . . May 11, 2007, the Securities Commissioner issued a [Notice] Denying Effectiveness to a Registration Statement and to Seek the Issuance of an Order Revoking Available Exemption on the grounds that the Securities Commissioner had reason to believe the Registration Statement submitted by CIF was incomplete, false, misleading or tended to work a fraud upon purchasers."[4] (Id. Ex.1 (Condon Aff. ¶ 3).) Plaintiffs allege that in 2007 Condon "began a systematic persecution of CIF and Field." (Pls. Mem. Opp'n Summ. J. 7.) Plaintiffs allege that Condon "abused his position in the Securities Division" to intentionally "do anything he could to close down CIF." (Id. 7-10.) Condon argues that he is immune from suit by absolute prosecutorial immunity and if not prosecutorial immunity, by qualified immunity. (Condon Mem. Supp. Summ. J., generally.)

Condon's actions were prosecutorial in nature and he is absolutely immune from suit. According to the Notice, after considering documentation relating to CIF, the Division had

---

[4] The Notice is signed by Tracy A. Meyers, an Assistant Attorney General, who has not been named as a Defendant. (Defs. Mem. Supp. Summ. J. Ex. 11 (Notice).)

6

"reason to believe that the registration statement submitted by [CIF was] incomplete, false, misleading, and tends to work a fraud upon purchasers." (Defs. Mem. Supp. Summ. J. Ex. 11 (Notice).) Additionally, the Notice explained that the Division intended to "seek the issuance of a stop order, pursuant to S.C. Code Ann. § 35-1-306(a), denying effectiveness of the registration statement filed by [CIF]" and "seek the issuance of an order, pursuant to S.C. Code Ann. § 35-1-204, revoking as to [CIF] any exemption in S.C. Code Ann. § 35-1-202 under which [CIF] without registration is offering or may offer securities to existing note holders or to other South Carolina investors." (Id. Ex. 11 (Notice).)

Plaintiffs argue that the Notice "is not a finding of probable cause" and since "no indictment" has been filed against them, Condon is not entitled to absolute immunity. (Field's Objections 7.) The decision to issue a stop order is a discretionary decision that exceeds mere investigation. See Goldstein, 364 F.3d at 215 ("Once a prosecutor possesses probable cause, he must decide whether to prosecute, which charges to initiate, what trial strategy to pursue, and a multitude of other important issues that require him to exercise discretion. In a pre-probable-cause investigation, on the other hand, a prosecutor exercises no more discretion than a police officer and thus should enjoy no more protection than qualified immunity.") Courts have consistently viewed the dividing line to determine whether absolute or qualified immunity applies as whether the function taken by the Defendant was more akin to that of a police officer or a prosecutor's quasi-judicial role. See e.g., Rex v. Teeples, 753 F.2d 840, 844 (10th Cir. 1985) (distinguishing "between the prosecutor's quasi-judicial role warranting absolute immunity, and his 'police-related' work not accorded such immunity").

Prior to issuing the Notice, the Division investigated its concerns about CIF's financial matters by requesting information about their financial statements and by engaging a Certified Public Accountant to review CIF's financial statements. (Defs. Mem. Supp. Summ. J. Ex. 11 (Notice).) However, at the time of filing the Notice, the acting Assistant Attorney General moved into an adversarial realm more akin to advocating on behalf of the State. As such, Plaintiffs' objection that the magistrate judge erred in concluding that Condon is entitled to prosecutorial immunity is without merit.

### b. McMaster

Plaintiffs argue that McMaster failed to adequately and properly train and/or oversee Defendants from conspiring to violate Plaintiffs' civil rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (Compl. ¶¶ 242-53.) McMaster is also shielded from suit by prosecutorial immunity. To allow suit against a supervising prosecutor to go forward would create "practical anomalies." Van de Kamp v. Goldstein, 129 S. Ct. 855, 863 (U.S. 2009). "[B]ecause better training or supervision might prevent most, if not all, prosecutorial errors at trial, permission to bring such a suit . . . would grant permission to . . . defendants to bring claims in other similar instances, in effect claiming damages for . . . training or supervisory failings." Id. "Most important, the ease with which a plaintiff could restyle a complaint charging a . . . failure [by the prosecutor] so that it becomes a complaint charging a failure of training or supervision [by the presecutor's supervisor] would eviscerate" prosecutorial immunity. Id. Consequently, McMaster is entitled to absolute immunity and Plantiffs' objection is without merit.

### c. Windsor

Windsor is an investigator with the Division. His duties "include the investigation of cases in which allegations of securities fraud are present that might lead to the filing of civil enforcement charges, as directed by the attorneys under whose supervision [he] work[s]." (Defs. Mem. Supp. Summ. J. Ex. 13 (Windsor Aff. ¶ 3).) Windsor has been involved with the civil investigation of CIF and Field since 2003. (Id. Ex. 13 (Windsor Aff. ¶ 4).) During his investigation, "any investigative activities . . . were taken at the direction of one or more attorneys in the . . . Division." (Id. Ex. 13 (Windsor Aff. ¶ 4).) During the course of his investigation, Windsor submitted an affidavit in a state court civil action involving CIF and Field, Tomz v. Capital Investment Funding, LLC, C/A No. 2008-CP-23-3665, detailing some of his findings of suspicious banking transactions. (Id. Ex. 13 (Attach. 1 Windsor Aff. ¶ 9).) Plaintiffs allege that Windsor's involvement in Tomz was "purely malicious." (Field Objections 16.)

Plaintiffs argue that "Windsor is an investigator and could not act as an advocate. His actions from 2003 through 2007 cannot be eligible for absolute immunity." (Id. at 7.) The court agrees. Windsor is not immune from suit by prosecutorial immunity. Windsor acted merely as an investigator and not as a prosecutor. While Windsor's findings may have aided in decisions to prosecute or initiate proceedings against Plaintiffs, Windsor did not act as a prosecutor nor were his tasks "inherently prosecutorial in nature." We, the People, Sakima Iban Salih El Bey v. McMaster, No. 3:07-2137, 2008 WL 1849800, at *6 (D.S.C. Apr. 24, 2008) (unpublished). However, Windsor is entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotation marks omitted).

> What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

Id. (internal quotation marks omitted).

> [C]learly established for purposes of qualified immunity means that [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Id. at 614-15 (internal quotation marks omitted).

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the United States Supreme Court established a "two-step sequence for resolving government officials' qualified immunity claims." Pearson v. Callahan, 129 S. Ct. 808, 815 (U.S. 2009). "First, a court [has to] decide whether the facts that a plaintiff . . . allege[s] . . . [set] out a violation of a constitutional right. Second, if the plaintiff . . . satisfie[s] this first step, the court . . . decide[s] whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 815-16 (internal citations omitted). In Pearson, however, the United States Supreme Court held that "while the [Saucier test] is often appropriate, it should no longer be regarded as mandatory." Id. at 818. "The judges of the district courts . . . should be permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

Plaintiffs have failed to allege that Windsor has violated their constitutional rights. Thus, Plaintiffs failed to satisfy the first prong of Saucier. Plaintiffs broadly assert that Windsor "knew [his] conduct bore the risk of violating [Plaintiffs'] clearly established constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments." (Pls. Mem. Supp. Summ. J. 17.) Plaintiffs' complaint, however, fails to specifically establish that Windsor violated their constitutional rights. Plaintiffs mainly allege that Windsor exceeded the scope of his authority during his investigation of CIF and Field, provided false statements in various affidavits, and formed an illegal enterprise with Condon to "close CIF." (Compl. ¶¶ 61-64, 77, 84, 173, 179, 184, 212, 217-18, 226, 229.) Plaintiffs also argue that Defendants wrongfully seized and/or disseminated their confidential banking records in violation of the Fourth Amendment. (Id. ¶ 234.) Specifically, Plaintiffs allege that Windsor "supplied attorney Stan Case with a complete file of documents and banking transactions Windsor had improperly obtained and requested Case sue CIF, Field and Kelley and participate in a conspiracy to injure the plaintiffs." (Id. ¶ 170.) Plaintiffs provide no further evidence to support these allegations. Therefore, the court finds that Plaintiffs have asserted no constitutional violation on behalf of Windsor.

### d. Logan

Logan is also an investigator with the Office. (Defs. Mem. Supp. Summ. J. Ex. 12 (Logan Aff. ¶ 2).) Logan investigates "cases in which allegations of securities fraud are present that might lead to the filing of criminal charges. [His] duties also include other duties related to the prosecution of criminal charges, or duties that are in aid of the investigation and prosecution

of criminal charges." (Id. Ex. 12 (Logan Aff. ¶ 3).) Defendants allege that Logan "has had very limited involvement with the Plaintiffs. He has investigated some of the activities of the Plaintiffs." (Id. at 14.)

Plaintiffs argue that Logan is not entitled to prosecutorial immunity. (Field Objections 13.) For the reasons stated above regarding Windsor, the court finds that Logan is not entitled to prosecutorial immunity. However, Logan is entitled to qualified immunity. Plaintiffs allege that Logan acted outside the scope of his investigatory authority by (1) harassing "numerous family members, business associates, Church officers, and acquaintances of Field and/or Kelly"; (2) participating in an online chat room or blog "encouraging the Note Holders of CIF to sue [Plaintiffs]; (3) attempting to persuade one or more civil suits against Plantiffs' attorneys; (4) contacting judges to submit false affidavits; (5) illegally obtaining bank records; (6) threatening "attorney Stan Case with a law suit from all of the Note Holders if he did not cooperate with [him]"; (7) publishing false information to the Greenville News; interfering with settlement negotiations; and (8) failing to withdraw the Notices of Intent to Seek Stop Orders. (Compl. ¶¶ 180-81, 188-89, 190, 201, 217, 218, 263.)

However, Plaintiffs have failed to support the allegations that Logan violated their constitutional rights. Plaintiffs provide no information to support their allegation that Logan illegally obtained bank records during his investigation nor do they provide any evidence, outside of mere allegations, to establish any violation of other constitutional or statutory rights. As such, the court finds that Plaintiffs have failed to assert a constitutional violation on behalf of Logan.

### e. Jordan

Jordan is also an investigator for the Office. (Defs. Mem. Supp. Summ. J. Ex. 12 (Jordan Aff. ¶ 3).) Jordan investigates "cases in which allegations of securities fraud are made. The investigations that [he] conduct[s] may lead to the filing of criminal charges. [His] duties also include other duties related to the prosecution of criminal charges, or duties that are in aid of the investigation and prosecution of criminal charges." (Id. Ex. 14 (Jordan Aff. ¶ 3).) Plaintiffs argue that Jordan is not entitled to prosecutorial immunity. (Field Objections 13.) For the reasons stated above regarding Windsor, the court finds that Logan is not entitled to prosecutorial immunity. Further, Jordan acknowledges that "prosecution decisions are beyond the scope of [his] duties." (Defs. Mem. Supp. Summ. J. Ex. 14 (Jordan Aff. ¶ 4(b)).) Jordan is, however, entitled to qualified immunity for the same reasons as Windsor and Logan.

Plaintiffs have failed to allege a constitutional violation as to Jordan. Plaintiffs allege that Jordan (1) wrongfully interfered with civil actions against CIF because he "telephoned Field's ex-wife" telling her that Field was going to be prosecuted for false advertising and securities fraud, (2) harassed family members and acquaintances of Field and/or Kelley, (3) participated in chat room or blog conversations regarding Plaintiffs, (4) "demand[ed] information and documents . . . which he knew were barred to the Attorney General as having been under seal and/or the subject of pending protective orders," (5) intentionally caus[ed] Taillon severe emotional distress, illegally obtain[ed] bank records, (6) threatened "attorney Stan Case with a law suit from all of the Note Holders if he did not cooperate with" him, (7) published false information to the Greenville News, (8) interfered with settlement negotiations, and

13

(9) continued to serve "bad subpoenae," among other things. (Compl. ¶¶ 173, 179-81, 186-87, 190, 201, 217-18, 220.)

Plaintiffs have failed to allege that Jordan has violated their constitutional rights. Plaintiffs provide no information to support their allegation that Jordan illegally obtained bank records during his investigation nor do they provide any evidence, outside of mere allegations, to establish any other violation of constitutional or statutory rights. Therefore, the court finds that Plaintiffs have failed to assert a constitutional violation by Jordan.

### f. Evans

Evans was a prosecutor with the Office. (Defs. Mem. Supp. Summ. J. 8.) Evans died on June 20, 2009. (Id.) The evidence in the record does not detail the scope of Evans' involvement with CIF or any other Plaintiffs.[5] The complaint was filed after Evans' death, therefore the court is without an affidavit detailing her involvement. As a result, the court is unable to determine whether Evans is entitled to prosecutorial immunity. However, Evans is entitled to qualified immunity.

Plaintiffs allege that Evans (1) "telephoned Judge Few directly and engaged in forbidden *ex parte* conversations with him . . . [knowing] such phone conversations violate . . . Rules of Professional Conduct," (2) "submitted an affidavit of [Jordan] to the Court and requested on an *ex parte* basis the Court 'freeze' all funds in the names of Arthur Field, Kathryn Taillon, Davyd Field and Allyson Field," (3) requested the court to compel Field and his family to appear on June 17, 2009, to give evidence to the State Law Enforcement Division and to provide evidence

---

[5] For instance, Defendants allege that Evans participated in private civil proceedings against CIF, yet they do not explain the extent or scope of Evans' participation. (Defs. Mem. Supp. Summ. J. 9.)

14

to the Court, in violation of the Fifth Amendment, (4) threatened "attorney Stan Case with a law suit from all of the Note Holders if he did not cooperate with" her and other Defendants, (5) wrongfully and intentionally provided copies of Suspicious Activity Reports "in violation of federal law," (6) deliberately violated the Rules of Court and the Canons of Ethics and the Rules of Professional Conduct, (7) coerced an attorney to notarize Jordan's affidavit in Jordan's absence, and (8) published false information to the Greenville News.[6] (Compl. ¶¶ 188-89, 194, 201, 204-05, 207, 217.)

Plaintiffs have failed to allege that Evans violated their constitutional rights. Plaintiffs provide no further evidence aside from their allegations. Consequently, the court finds that Plaintiffs have failed to assert a constitutional violation by Evans.

### 2. Injunctive Relief

Plaintiffs allege that "any threatened or actual criminal investigation and/or prosecution of Field, Taillon and/or Kelley must be immediately and permanently enjoined." (Compl. ¶ 333.) Further, Plaintiffs seek "to enjoin defendants and the State of South Carolina Office of the Attorney General to conform it and their future conduct to the requirements of federal law and to stay all future prosecution of Field, Taillon, Kelley and other persons connected with them or CIF." (Id. Request for Relief.) In addition, Plaintiffs request "temporary and permanent injunctive relief preventing the Attorney General of South Carolina and/or its State Grand Jury from issuing an indictment against [Plaintiffs] pursuing further criminal and/or civil and/or administrative investigations." (Id.)

---

[6] The complaint does not state with certainty that Evans performed many of the acts. Instead the complaint states that Evans "and/or" another Defendant performed most allegations. See (Compl. ¶¶ 188-89, 192, 197, 217).

Defendants argue that the magistrate judge erred by not recommending that summary judgment be granted as to Plaintiffs' claims for injunctive relief. (Defs. Objections, generally.); (Condon Objections, generally.) As to Condon and Evans, the court agrees with Defendants. Condon is no longer employed by the Office and therefore is no longer in the position to bring suit against Plaintiffs as an Assistant Attorney General. Similarly, Evans is deceased and unable to act against or prosecute Plaintiffs. As such, the court grants Condon and Evans summary judgment as to Plaintiffs' claims for injunctive relief.

The Securities and Exchange Commission ("SEC") is "the federal administrative agency entrusted with the duty and power to regulate and control transaction in securities." Ayers v. SEC, 482 F. Supp. 747, 749 (D. Mont. 1980). In the case at bar, the Division is a state agency with the power to regulate securities. Although the investigation in this case was undertaken by the Division pursuant to S.C. Code Ann. § 35-1-101 et seq., the case law interpreting the powers of the SEC is persuasive. Cases have noted that "while . . . the SEC must have great latitude and freedom from undue judicial interference in conducting agency investigations, the agency discretion is not unfettered." Id. at 751. Some courts have found that the court can enjoin "SEC investigations . . . predicated on allegations to the effect that the SEC has plainly exceeded its statutory authority or threatens irreparable injury in clear violation of an individual's rights." Id. at 751-52 (internal quotation marks omitted). However,

> [t]he Commission's power to investigate . . . extends sweepingly to the exploration of 'any facts, conditions, practices, or matters which it may deem necessary or proper to aid in the enforcement of the provisions of [the Securities Exchange Act], in the prescribing of rules and regulations thereunder, or in securing information to serve as a basis for recommending further legislation concerning the matters to which . . . (the Act) relates.' It is absurd to say that the Commission may not employ this power to delve further into matters it has

16

encountered in the course of its duties. One of the more elementary reasons for creating such agencies is precisely their ability to accumulate knowledge and 'to draw upon the entirety of their specialized experience . . . . It makes no difference that plaintiffs choose to believe the Commission is bent ultimately upon punishing them.

Thomson & McKinnon v. SEC, 268 F. Supp. 11, 14-15 (D.C.N.Y. 1967). Similarly, in the instant case, the court recognizes that Defendants' authority and discretion to investigate Plaintiffs is not unfettered.

On July 22, 2009, Plaintiffs Field and Taillon filed a motion for a temporary restraining order or a temporary injunction. Plaintiffs sought relief restraining Defendants from issuing further threats of prosecution against Plaintiffs and pursuing further investigation of the Plaintiffs in relation to the activities of CIF. (Mot. TRO 2.) The court denied Plaintiffs' motion. "[W]hen a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress for an alleged deprivation of federal rights." Wooley v. Maynard, 430 U.S. 708, 710 (1977). However, "a federal court should not enjoin threatened prosecutions except when necessary to prevent irreparable harm which is great and immediate." Bykofsky v. Borough of Middletown, 389 F. Supp. 836, 844 (M.D. Pa. 1975). In the Order denying the motion for a temporary restraining order, the court explained that the burden of litigation not brought in bad faith is not an irreparable injury and held that Plaintiffs were unable to establish an irreparable injury. (Sept. 24, 2009 Order.) Similarly, Plaintiffs' complaint fails to establish any irreparable harm. Aside from Plaintiffs' conclusory allegations, there is no evidence that Defendants lacked a good faith basis for pursuing an investigation. Plaintiffs' belief that Defendants are "bent" on punishing them is insufficient. See Thomson, 268 F. Supp. at 14-15. Therefore, the court grants the remaining Defendants summary judgment as to Plaintiffs' claims for injunctive relief.

Based on the foregoing, the court grants Defendants' motions for summary judgment and adopts the magistrate judge's Report and Recommendation to the extent that it is consistent with this Order.

It is therefore

**ORDERED** that Defendants' motion for summary judgment, docket number 110, is granted; it is further

**ORDERED** that Condon's motion for summary judgment, docket number 113, is granted; it is further

**ORDERED** that Field's motion for reconsideration, docket number 146, is denied as moot; and it is further

**ORDERED** that Field and Taillon's appeal of the magistrate judge's denial of the motion for reconsideration of the order granting Defendants' motion to stay discovery and denying Field and Taillon's motion for limited discovery, docket number 169, is denied as moot.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
August 16, 2010

### NOTICE OF RIGHT TO APPEAL

The Plaintiffs are hereby notified that they have the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.